David ADICKES, Appellant,

v.

Andre ANDREOLI, Appellee.

No. 17618.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 8, 1980.

Rehearing Denied June 12, 1980.

Lackshin & Nathan, Herbert Lackshin, Houston, for appellant.

Schlanger, Cook, Cohn, Mills & Grossberg, Joel Cook, Houston, for appellee.

Before COLEMAN, C. J., and WALLACE and DOYLE, JJ.

COLEMAN, Chief Justice.

David Adickes and Alan C. Tatom appeal from a judgment rescinding an agreement to purchase an interest in a limited partnership organized for the purpose of speculating in real estate and ordering the return of the consideration paid. The case was tried to the court without a jury. Findings of fact and conclusions of law were filed. While Alan C. Tatom filed an appeal bond, he failed to file a brief in this court. The judgment will be affirmed.

Andreoli brought this action against Al Clements, Time Equity Management Company Tomball, Ltd., Time Equity Management Company, James P. McCauley, and Alan C. Tatom. Andreoli alleged that his purchase of a 15% interest in the Time Equity Management Company Tomball, Ltd., was induced by omissions and misrepresentations of the defendants, and pled entitlement to relief in the alternative under the Texas Securities Act, Article 581–1 et seq., and under the common law doctrine of fraud. The trial court rendered judgment against all of the defendants except Al Clements, ordering rescission of Andreoli's subscription to the 15% interest in Time Equity Management Company Tomball, Ltd., and further decreeing that Andreoli recover from the defendants other than Al Clements, jointly and severally, the sum of $49,699.33 with interest, which sum represents the payments made by Andreoli to the limited partnership with prejudgment interest.

David Adickes and Andre Andreoli are professional artists. Prior to the events culminating in this law suit they were represented by the same gallery in New York City. Through this connection Andreoli became acquainted with Adickes by reputation. In early 1972 Andreoli moved to Houston, Texas, and immediately sought out Adickes. They became friends and visited frequently. The subject of Houston real estate was often discussed. Adickes was active in purchasing property at that time. Andreoli testified that he had heard

of Adickes' success in real estate prior to his Houston visit, and that he often asked Adickes to show him some investments and allow him to "get on his bandwagon."

By a general warranty deed dated June 9, 1972, Adickes had obtained from Sipost Building Corporation a 100.19 acre tract of land near Tomball, Texas. The purchase price was $6,500.00 per acre. As part of the purchase price, Adickes executed in favor of Sipost Building Corporation a promissory note in the sum of $576,235.00.

On November 28, 1972, Adickes signed an earnest money contract by which he agreed to sell to James P. McCauley, as trustee, an undivided 60% interest in the 100.19 acre tract (Tomball tract). The purchase price under this contract was $16,500 per acre, $89,188.10 to be paid in cash on the closing date, and the balance to be evidenced by promissory notes without personal liability. At this time McCauley was acting as trustee for the proposed Time Equity Management Company Tomball, Ltd., and he testified that he later conveyed by unrecorded deed the 60% ownership to the limited partnership. The general partner in Time Equity Management Company Tomball, Ltd. was Time Equity Management Company, which was itself a general partnership composed of Tatom and McCauley. Time Equity Corporation was a third entity through which business was transacted prior to formation of the limited partnership. Adickes had no relationship either as owner or partner in any of these entities (aside from the joint ownership of the Tomball tract with the limited partnership).

After the earnest money agreement was signed by McCauley and Adickes, solicitation for the sale of limited partnership interests was begun. During this period of time Andreoli continued to request investment advice from Adickes. In late February, 1973, Adickes took Andreoli to several investment firms in order to compare "track records." He then took Andreoli to the Time Equity Company offices and introduced him to Al Clements, who explained the merits of investment in the Tomball property. Andreoli testified that Adickes advised him that the property was "dynamite", and would be a good investment. Subsequently, on March 3, 1973, Andreoli presented a check to Clements for $24,900 (plus $1,000 on behalf of his wife) for a 15% interest in the limited partnership. While Adickes testified that he was not present when this check was presented, Andreoli testified that Adickes was present.

The parties disagree concerning the knowledge Andreoli had of Adickes' interest in the Tomball tract at the time of his purchase of the partnership interest. Andreoli testified that he knew nothing of Adickes' interest in the Tomball tract at the time of his investment. Adickes testified that he had informed Andreoli of his 40% retained interest in the Tomball tract, but he agreed that he had not informed Andreoli that his profit on the sale to McCauley amounted to about $10,000 per acre. Other witnesses testified that they felt that Andreoli was aware of Adickes' retained interest in the land at the time he purchased his interest in the partnership.

Time Equity Management Company encountered difficulty in selling out the shares of the limited partnership and Adickes agreed to close the sale of the property at a reduced down payment. On March 2, 1973, one of the Time Equity Companies advanced Adickes a loan of $13,500 and on March 6, 1973, Adickes and McCauley closed the sale, and at that time Adickes received the sum of $22,717.20.

Andreoli subsequently paid into the limited partnership $8,985 in December, 1973, and $2,468 in March, 1974, raising his total contribution to $36,353. Andreoli testified that in late 1974 he became discontented with his investment because of a lack of communication from Time Equity. He sought legal advice and learned of Adickes involvement in the ownership of the Tomball tract. He approached Adickes and asked that Adickes buy him out. Adickes refused to do so. This suit was then filed.

The limited partnership subsequently defaulted on its notes to Adickes, and Adickes foreclosed the notes and bought the property at the foreclosure sale for $250,000.

Adickes appeals the adverse judgment of the trial court on eleven points of error, the first of which challenges the applicability of the Texas Securities Act on the ground that the trial court erred in holding that the 15% ownership interest in the limited partnership was a "security" within the meaning of Section 4 of the Texas Securities Act (Art. 581–4, Rev.Civ.Stat.).

A lengthy definition of the term "security" is found in the Texas Securities Act and was considered by the Supreme Court of Texas in *Searsy v. Commercial Trading Corp.*, 560 S.W.2d 637 (Tex.1977). A portion of this definition was quoted in these words:

"The term 'security' or 'securities' shall include any share, stock . . . note, bond, debenture, mortgage certificate or other *evidence of indebtedness* . . . or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, *investment contract* or any other instrument commonly known as a security, whether similar to those herein referred to or not."

The court then stated that the term "investment contract" and "evidence of indebtedness" appeared to be taken from an almost identical definition of "security" in the Federal Securities Act of 1933, 15 U.S.C. Section 77b(1) (1971). The court then quotes with approval the construction of the term "investment contract" by the United States Supreme Court in *S. E. C. v. W. J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244, 1251 (1946) and stated that the test adopted by the United States Supreme Court to determine whether or not an investment contract within the Federal Securities Act was involved in a scheme for the investment of money embodied four requirements. There must be (1) an investment of money; (2) a common enterprise; (3) expectation of profits; (4) solely from the efforts of others. This test was approved by the Supreme Court of Texas with the exception that instead of requirement (4) it adopted a more realistic test which inquires whether the investor made any significant managerial efforts and whether the efforts made by those other than the investor are undeniably significant ones comprising those essential managerial efforts which affect the failure or success of the enterprise.

Adickes particularly relies on *McConathy v. Dal Mac Commercial Real Estate, Inc.*, 545 S.W.2d 871 (Tex.Civ.App.—Texarkana 1976, no writ). This case involved the purchase of an interest in a joint venture formed for the purpose of holding for investment and capital appreciation a certain tract of land in Dallas County, Texas. The court held that an investment contract as contemplated by the securities laws was not involved because the requisite element of profits resulting solely or substantially from the efforts of others was lacking. The court held that "(t)he association of persons in a joint venture to acquire land to be held for them by a trustee for possible enhancement in value at resale is not within the Securities Act, where the essential element of reliance on the managerial, operational or developmental efforts of others is not present."

In *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704 (1956), the court stated that "(i)t is well settled that the Act does not apply to a joint adventurer and to transactions between adventurers. Joint adventurers and partners are not to be denied the right to recover their interest merely because of a failure to comply with the Securities Act and we think it equally true that a dissatisfied joint adventurer may not recover from other joint adventurers merely because of the failure of the latter to comply with the Act."

In support of the above statement the Supreme Court cited *Polk v. Chandler*, 276

Mich. 527, 268 N.W. 732 (1936) in which the court stated that "(i)t is not a violation of the 'Blue Sky Law' for several persons to join and furnish, proportionately, parts of the purchase price of real property to be held for their benefit by a trustee. Sales of units by such a syndicate, after organization, cannot be made without compliance with the 'Blue Sky Law'."

In *Brown v. Cole* the Supreme Court held that a prospectus and certain receipts for the money invested by the plaintiffs must be construed as "evidence of indebtedness" and thus a "security" as defined in the Securities Act.

Appellee contends that the definition of security in the Act reading "the term 'security' or 'securities' shall include . . . any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company . . . " clearly includes the instruments on which he sued. The term "company" is defined in the Act to include a corporation, person, joint stock company, partnership, limited partnership, association, company, firm, syndicate trust, incorporated or unincorporated.

Andreoli introduced into evidence a receipt executed in the name of Time Equity Management Company acknowledging the receipt from Andreoli of $24,900 for the purchase of a 15% ownership interest in a limited partnership to be known as Time Equity Management Company Tomball, Ltd. It stated that the money would be deposited in the limited partnership's separate bank account to be used by the general partner for the formation and operation of the partnership. It further provided that in the event the partnership was not consummated within 120 days from the date of the receipt the general partner was to return the funds.

The brochure furnished to Mr. Andreoli stated that the limited partnership was being formed for the purpose of acquiring an undivided 60% interest in 100.19 acres of land in the Jessee Pruitt Survey, Abstract 629, Harris County, Texas. It stated that the general partner of Time Equity Management Company Tomball, Ltd., will be Time Equity Management Company, or its nominee, and that the general partner would be responsible for the management of all business transactions of the partnership. Without further recitation of the details of the brochure, it is evident that Mr. Andreoli agreed to purchase a 15% ownership interest in a proposed limited partnership on condition that it be formed within 120 days. Andreoli was not purchasing a unit in the partnership after formation.

While at the time *Brown v. Cole* was decided the definition of "company" did not specifically include a "limited partnership", this fact has no significance in determining whether the instruments relied on by Andreoli constitute a security under the Act.

The Supreme Court of Texas has also construed the term "evidence of indebtedness" to mean "all contractual obligations to pay in the future for consideration presently received." *Searsy v. Commercial Trading Corp.*, supra. Under this definition the instruments relied on by Andreoli cannot constitute "evidence of indebtedness". Andreoli purchased an interest in the proposed limited partnership, which, in turn, purchased land. The money was advanced to Time Equity Management Company for transmittal to the proposed limited partnership. The agreement to repay the amount advanced in the event the partnership was not formed is of no significance. On a failure of consideration the law would imply an obligation to repay in any contract of purchase. In *Searsy v. Commercial Trading Corp.*, supra, the court stated:

" . . . Although the market fluctuations determined the amount to be paid or whether an amount was due, the options were represented as an obligation of CTC to pay money on certain contingencies. The automatic repurchase feature converted CTC's obligation from one to buy or sell futures contracts to one to pay a monetary return at some future time.

We hold that this brings the commodity options within the definition of an 'evidence of indebtedness.' "

■ The transaction in question here does not come within the Securities Act as an instrument representing or secured by an interest in the capital, property, assets, profits or earnings of a company. *Brown v. Cole*, supra; *Searsy v. Commercial Trading Corp.*, supra; *Polk v. Chandler*, supra.

■ The evidence does not support a finding that the instruments relied on constitute an "investment contract" as construed by the Supreme Court of Texas in *Searsy v. Commercial Trading Corp.*, supra. We find no evidence that it was the expectation of the parties that the success of the venture would depend upon those "essential managerial efforts . . . which effect the failure or success of the enterprise." *Searsy v. Commercial Trading Corp.*, supra; *McConathy v. Dal Mac Commercial Real Estate, Inc.*, supra.

■ Andreoli alleged in the alternative a cause of action for rescission based on common law fraud and on the violation of Section 27.01 of the Business and Commercial Code of the State of Texas. The trial court made findings of fact which would support his judgment rescinding Andreoli's purchase of the 15% interest in the limited partnership. Adickes urges that there is no evidence that he made material misrepresentations or omissions of fact to induce Andreoli to purchase an interest in the limited partnership. He specifically asserts that the evidence is factually insufficient to establish that he failed to disclose his ownership of an interest in the property. Adickes also asserts that the trial court erred in finding that his failure to disclose the price paid for the property was material to plaintiff's investment decision because the evidence was factually insufficient to establish that the price paid by the limited partnership was not the true market value on the date of purchase. By appropriate points of error Adickes also urges that the trial court erred in finding that he stood in

a fiduciary relationship to Andreoli because there is no evidence or insufficient evidence to support such a finding.

One theory of liability which is applicable under the facts of this case is found in Volume 3, Restatement Torts 2d, Section 551, re-reading:

"(1) One who fails to disclose to another a thing which he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. . . . "

The trial court found that Adickes did not reveal the fact that he had acquired the 60% interest in question at a price of $6,500 per acre, that he had made an arrangement with McCauley for a program of exploitation of the property by sale to the limited partnership, that the property had not yet been conveyed to McCauley or the limited partnership, that Adickes retained a 40% interest in the property, or that Adickes held a vendor's lien note for substantially all of the price to be paid by the limited partnership for the property. The evidence is sufficient to support these findings of fact by the trial court.

■ The trial court's finding of a fiduciary relationship between Adickes and Andreoli is supported by the testimony that they were close personal friends and that at Andreoli's request Adickes had agreed to assist him in locating a suitable real estate investment. Adickes knew that Andreoli relied on his ability and experience in the

real estate business in the vicinity of Houston and its surrounding areas. A confidential relationship may arise not only from the technical fiduciary relationships, but may also arise informally from moral, social, domestic, or purely personal relationships. *Thigpen v. Locke*, 363 S.W.2d 247 (Tex.1962). The determination of whether or not a fiduciary relationship exists is a question of fact. *Schiller v. Elick*, 150 Tex. 363, 240 S.W.2d 997 (1951).

■ The test of materiality to be applied in an action for fraud is whether the contract would have been signed by the plaintiff without such misrepresentations having been made. *H. W. Broaddus Company, Inc. v. Binkley*, 126 Tex. 374, 88 S.W.2d 1040 (1936). The trial court found that if Andreoli had been aware of the interests of Adickes in the transaction, he would not have made his subsequent contributions to the limited partnership. It also found that Andreoli relied upon the representations made to him by Adickes as being truthful and not subject to any omissions of fact necessary to make the statements made not misleading. These findings are supported by Andreoli's testimony. While there is testimony to the effect that Andreoli knew that Adickes owned an interest in the real estate, the trial court resolved the conflict in the testimony. The evidence in support of the trial court's finding is not factually insufficient.

Adickes asserts that the facts which the court found Adickes failed to disclose were not material, and that the failure to disclose these facts was not the producing agent of damage to Andreoli. He points to Andreoli's testimony that he had repeatedly told Adickes that he desired to be involved jointly in an investment with Adickes. We are unimpressed with this argument. It is one thing to go into a venture with another on equal terms and another to purchase an interest from the other at a great profit to the latter. The trial judge might well have felt that Adickes' recommendation of Time Management Company was colored by the fact that that company was promoting a limited partnership which had as its invest-

ment land purchased from Adickes largely on credit at a large profit. Had Andreoli known the facts he might well have discounted Adickes' advice as being that of an interested party. Since the property was not being purchased for use, the fact that the partnership proposed to pay Adickes $10,000 per acre more than he had paid for it six months previously might well have been critical in assessing its potential for further growth in value.

■ The testimony of the price paid for the real estate by Adickes was some evidence of its value since the sale was near in time to the date of the transaction in question. *Maxey v. Texas Commerce Bank of Lubbock*, 571 S.W.2d 39 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e., Tex., 580 S.W.2d 340).

■ Some pecuniary injury must be shown in an action to rescind a contract for fraud. The injury or damage suffered as a result of the fraud need not be measured in money, but it is sufficient if the defrauded party has been induced to incur legal liabilities or obligations different from those contracted for or represented. The amount of the damage is immaterial, provided it is substantial. It is not necessary to his cause of action that the complaining party show that he has suffered pecuniary injury at the time of the trial provided the facts show that he will suffer such injury unless the contract is cancelled. *Russell v. Industrial Transport Company*, 113 Tex. 441, 258 S.W. 462 (1924); *Citizens Standard Life Insurance Company v. Muncey*, 518 S.W.2d 391 (Tex.Civ.App.—Amarillo 1974, no writ). *Texas Industrial Trust v. Lusk*, 312 S.W.2d 324 (Tex.Civ.App.—San Antonio 1958, writ ref'd); *Tashnek v. Hefner*, 282 S.W.2d 298 (Tex.Civ.App.—Galveston 1955, writ ref'd n. r. e.).

The trial court found as fact:

"12. The property in question in all of 1972, 1973 and 1974 was of a value far less than the price to be paid by Time Equity Management Company Tomball, Ltd., to Adickes therefor.

"13. The apparent value of the land in question on March 3, 1973, was $6,500 per acre.

"14. Prior to January 20, 1975, the value of the property had not risen to any value near $17,490."

There is evidence that in June, 1972, Adickes purchased the property from Sipost Building Corporation for $6,500 per acre, giving as part of the consideration a no personal liability promissory note in the sum of $576,235. This note bore interest at the rate of 7½% per annum payable annually. No payments on principal were required to March of 1975.

Because of the low down payment and liberal credit terms the price which Adickes agreed to pay Sipost for the land in question would have little probative value as to the cash market value of the land on that date. However, an inference could be drawn that the cash market value of the property on that date would not exceed the sum of $6,500 per acre. There is no evidence that the value of the land had increased between that date and the date on which Adickes purchased his interest in the partnership.

At the time Andreoli learned the facts concerning Adickes' part in the transaction, it appeared that the partnership might suffer a financial loss on the Tomball tract. There was testimony that the price of raw land at a distance from the center of the City of Houston was strongly affected by the action of the OPEC Nations in raising the price of oil. Mr. Adickes testified that in 1974 speculation in real property was very low because it was a very depressed time. He told Mr. Andreoli that it was impossible to sell an interest in any raw land in Houston at that time. A number of the investors in the limited partnership defaulted in their payments. In 1975 Adickes declared the partnership note to him in default and subsequently repurchased the land at a trustee sale. The evidence supports the findings of fact numbers 12, 13, and 14. The evidence will support an implied finding of fact in support of the trial court's judgment that Andreoli suffered financial injury by reason of his investment in the partnership.

The judgment is affirmed.