In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-01-00895-CR
NO. 01-01-00896-CR
NO. 01-01-00897-CR
NO. 01-01-00898-CR
NO. 01-01-00899-CR
NO. 01-01-00900-CR
____________

CAREY BERNARD CALDWELL, a.k.a. 
BERNARD TALIB DIN HASEN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 180th District Court 
Harris County, Texas
Trial Court Cause Nos. 818940, 818944, 818942, 
818951, 818952, & 818935




O P I N I O N
          A jury convicted appellant of six separate offenses of securities fraud and
assessed punishment for each offense at 18 years’ confinement in prison and a
$10,000 fine. On appeal, appellant challenges the legal and factual sufficiency of the
evidence. Specifically, appellant contends the evidence at trial was legally and
factually insufficient to prove that appellant sold or offered to sell a “security” within
the meaning of the Texas Securities Act. See Tex. Rev. Civ. Stat. Ann. art. 581-4(A) (Vernon Supp. 2002). We affirm. 
Facts
          Viewed in the light most favorable to the jury’s verdict, the evidence shows
that appellant served as president of TDH Unlimited, Inc. (TDH) from 1989 through
1998. In promoting its enterprise, TDH solicited prospective investors to attend
seminars. At the seminars, TDH recruited and signed investors to join the TDH
“Investment Club” by paying a $300 annual membership fee. TDH club members
were encouraged to participate in the TDH investment program by joining a team and
giving the team money to invest. TDH constructed each team to reach an aggregate
investment pool of $25,000, the minimum amount required for investment. 
Investments were obligated for time periods of 12, 15, or 28 months, and TDH told
investors to expect profit returns ranging from 100 to 300 percent. 
          TDH sold the proposition that American rice could be traded for African
diamonds, resulting in great profit. Once a team supplied $25,000, TDH told
investors that the money would be used to conduct an international “rice for
diamonds” exchange. TDH further told investors that Unalat, an Antiguan company,
would be performing the “rice for diamonds” exchange, and TDH instructed investors
to make traveler’s checks payable directly to Unalat. 
          The investors did not know that appellant was also the president of Unalat. It
is unclear whether Unalat ever performed any “rice for diamonds” exchanges. It is
clear, however, that money Unalat received was re-routed to various bank accounts
before finally being deposited into appellant’s personal bank accounts in Houston. 
From 1993 to 1998, Unalat deposited 2.4 million dollars into appellant’s Houston
accounts. 
          The evidence indicates that TDH actually served as a vehicle to facilitate
appellant’s efforts to operate a “Ponzi” scheme,


 in which earlier investors are paid
with money obtained from new investors. The success of this scheme depended on
appellant’s ability to recruit and sign new investors so that earlier investors could be
repaid. As new investors began to decline, and old investors began to demand
money, appellant’s scheme collapsed, resulting in substantial losses to investors. Did appellant sell or offer to sell a “security”?
          In two points of error, appellant contends the evidence was both legally and
factually insufficient to prove that appellant sold or offered to sell a “security”
because investors participated in joint ventures that cannot be properly characterized
as securities under the Texas Securities Act. See Tex. Rev. Civ. Stat. Ann. art. 581-4(A). If appellant is correct, his conviction must be overturned. See Tex. Rev. Civ.
Stat. Ann. art. 581-29 (Vernon Supp. 2002).
A.      Standard of Review
          When reviewing a legal sufficiency challenge, we ask whether, after viewing
the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. This
familiar standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences
from basic facts to ultimate facts. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.
Ct. 2781, 2788-89 (1979); Santellan v. State, 939 S.W.2d 155, 160 (Tex. Crim. App.
1997); Howley v. State, 943 S.W.2d 152, 155 (Tex. App.—Houston [1st Dist.] 1997,
no pet.).
          When reviewing a factual sufficiency challenge, we ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that the
proof of guilt is so obviously weak, or so outweighed by contrary proof, as to
undermine confidence in the jury’s determination. King v. State, 29 S.W.3d 556, 563
(Tex. Crim. App. 2000). Accordingly, we will reverse the fact finder’s determination
only if “a manifest injustice has occurred.” Id. (quoting from Johnson v. State, 23
S.W.3d 1, 12 (Tex. Crim. App. 2000)). 
B.      Analysis 
          The term “security” has been defined broadly and encompasses unusual
financial instruments as well as those commonly considered securities. See Tex. Rev.
Civ. Stat. Ann. art. 581-4(A). Because the definition of “security” appears to have
been taken from an almost identical definition of “security” found in the Federal
Securities Act of 1933, 15 U.S.C. § 77b (2002), Texas courts have looked to federal
courts when interpreting the definition of “security.” See Searsy v. Commercial
Trading Corp., 560 S.W.2d 637, 639 (Tex. 1977); Westchester Corp. v. Peat,
Marwick, Mitchell, & Co., 626 F.2d 1212, 1216-17 (5th Cir. 1980). The definition
of “security” includes the term “investment contract.” See Tex. Rev. Civ. Stat.
Ann. art. 581-4(A). 
          “Investment contract” is defined as (1) an investment of money, (2) in a
common enterprise, (3) with an expectation of profits, (4) to come solely from the
efforts of others. See Securities & Exchange Comm’n v. Howey, 328 U.S. 293, 301,
66 S. Ct. 1100, 1104 (1946); Searsy, 560 S.W.2d at 640; Adickes v. Andreoli, 600
S.W.2d 939, 943 (Tex. App.—Houston [1st Dist.] 1980, writ dism’d). 
          This appeal involves the fourth prong, “solely from the efforts of others.” 
Appellant suggests that there was no investment contract because (1) investors held
team meetings and elected a team leader, (2) funds were used to purchase one
commodity and exchange it for another, namely “rice for diamonds,” and (3) there
was no management or manipulation required by TDH for investors to realize a profit. 
According to appellant, these facts signify that investors retained some degree of
management control over their money and preclude any finding that expected profits
derived “solely from the efforts of others.” 
          We disagree. The securities laws must operate to give effect to their remedial
purposes by allowing substantive “economic realities” to govern over form. See
United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 848, 95 S. Ct. 2051, 2058
(1975). Consequently, to ensure that the securities laws are not easily circumvented
by agreements requiring a “modicum of effort” on the part of investors, the word
“solely” has not been construed literally when determining whether an investment
contract existed. See Searsy, 560 S.W.2d at 641; Securities & Exchange Comm’n v.
Koscot Interplanetary, Inc., 497 F.2d 473, 480 (5th Cir. 1974). The critical inquiry
is instead “whether the efforts made by those other than the investor are the
undeniably significant ones, those essential managerial efforts which affect the failure
or success of the enterprise.” Searsy, 560 S.W.2d at 641; Koscot, 497 F.2d at 483. 
          Although the joint venture agreements between TDH and its investors did allot
certain powers to investors, those powers can hardly be described as “essential
managerial efforts which affect the failure or success of the enterprise.” See id. 
Teams did conduct meetings, elect leaders, perform tax planning, and pool new
monies for additional investment. However, these acts were ministerial in light of
TDH’s exclusive contractual authority to “manage, coordinate, invest, sell, buy, host,
and coordinate meetings, arrange meeting places, set goals, advisors, counselors,
make deposits, disburse funds, and do all things that are reasonable and necessary
to manage the affairs of the TEAM . . . .” (capitalization in original; emphasis added). 
Furthermore, TDH expressly agreed to use prudent reliable methods and reasonable
care for the safekeeping and proper management of each team’s funds and assets. 
Investors testified that TDH made all of the investment decisions and that investors
were not required to do anything more than invest their money. Additionally, many
team members neither met nor corresponded with other members of their team. Thus,
the “economic reality” is that investors maintained a passive involvement with their
investment while expecting profits to be derived solely from the efforts of TDH. See
Forman, 421 U.S. at 848, 95 S. Ct. at 2058. 
          The supreme court conveyed its view on a very similar set of facts: 
          Once a customer has parted with his money, he is dependent upon
the financial responsibility, business ability, integrity, expertise and
market advice of appellant and, unknown to him, third parties who
participate in appellant’s commodity trading. It is the essential
managerial efforts of those other than the investor which affect the
failure or success of the enterprise. Investors are not required to, and
they do not, exert any significant efforts in order to make a profit on
their investment. For all practical purposes, the critical managerial
decisions affecting the investor’s funds are solely within the control of
the appellant. 
 
Searsy, 560 S.W.2d at 641 (citing Clayton Brokerage Co. of St. Louis v. Mouer, 520
S.W.2d 802, 809 (Tex. Civ. App.—Austin, writ ref’d n.r.e.), dism’d as moot on
rehearing per curiam, 531 S.W.2d 805 (Tex. 1975)). 
          It is no defense to appellant that investors’ funds were used to purchase and
exchange commodities. An investor in a commodities account who establishes that
he or she relied solely on the investment advice of a promoter satisfies the “solely
from the efforts of others” requirement. See Long v. Shultz Cattle Co., 881 F.2d 129,
138 n.8 (5th Cir. 1989); Securities & Exchange Comm’n v. Continental Commodities
Corp., 497 F.2d 516, 522 (5th Cir. 1974). In addition, courts have held that schemes
similar to appellant’s constituted a sale of “investment contracts” and thus securities. 
See Koscot, 497 F.2d at 485 (holding schemes in which promoters retain essential
managerial control over essential managerial functions of enterprise and where
investors’ realization of profits is inextricably tied to success of a promotional
pyramid scheme constituted security); see also Securities & Exchange Comm’n v.
Unique Financial Concepts, Inc., 196 F.3d 1195, 1201 (11th Cir. 1999) (holding
investment program tied to success of appellant’s “Ponzi” scheme was investment
contract); Securities & Exchange Comm’n v. Infiniti Group Co., 212 F.3d 180, 189
(3rd Cir. 2000) (holding defendant sold investment contracts when it substituted new
investors’ money for real investment return on old investors’ funds). 
          In this case, investors relied solely on TDH’s entrepreneurial efforts to produce
profit from their investments in the diamond commodities market. We note that
although many alternative schemes can be contrived in efforts to exploit prospective
investors, the concept of “security” found in the securities laws is capable of
adaptation to meet the countless and variable schemes devised by those who seek the
use of the money of others on the promise of profits. Howey, 328 U.S. at 299, 66 S.
Ct. at 1103. We hold that the evidence at trial was both legally and factually
sufficient to find that appellant sold or offered to sell an “investment contract” and
thus a “security” under Texas law. See Tex. Rev. Civ. Stat. Ann. art. 581-4(A). We
further hold that the facts appellant relies on do not so weaken or overwhelm the
State’s evidence as to render the judgment clearly wrong and manifestly unjust. 
          We overrule appellant’s first and second points of error. 
          We overrule all pending motions.
Conclusion
We affirm the judgment of the trial court.













     Elsa Alcala
     Justice

Panel consists of Justices Taft, Alcala, and Price.




Publish. Tex. R. App. P. 47.4.