Richard T. McCONATHY, Appellant,

v.

DAL MAC COMMERCIAL REAL ESTATE, INC., et al., Appellees.

No. 8410.

Court of Civil Appeals of Texas, Texarkana.

Dec. 28, 1976.

Rehearing Denied Feb. 1, 1977.

872

Ken R. Davey, Kerry P. Fitzgerald, Dallas, for appellant.

W. Ted Minick, Winstead, McGuire, Sechrest & Trimble, Dallas, for appellees.

CORNELIUS, Justice.

Appellant, Richard T. McConathy, brought suit against appellees, Dal Mac Commercial Real Estate, Inc., Richard M. Romano and J. W. Davis under Article 581–33 of the Revised Civil Statutes of Texas seeking recision of his purchase of an interest in the "Pioneer Road Joint Venture," which venture was stated in the agreement to be for the purpose of "holding for investment and capital appreciation" a tract of 23.3 acres of land in Irving, near Dallas, Texas. Appellant alleged that he had purchased a security, that the security had been sold to him by means of misrepresentations or omissions, that the security was required to be but was not registered with the Texas Securities Commissioner, and that the persons making such sale to the appellant were not licensed as security dealers. Appellees defended on grounds that the interest sold was not a security, that if it was a security no misrepresentation had been made by appellees, and that the transaction was exempt from registration by the provisions of Article 581–5 of the Texas Securities Act. At the conclusion of appellant's case, Appellee Davis moved for a directed verdict which was granted. The remaining appellees then proceeded with their testimony. At the conclusion of all of the testimony the court granted the appellees' motion for instructed verdict and rendered a take-nothing judgment against appellant.

Appellant contends the trial court erred in rendering a take-nothing judgment because (1) the interest he purchased was an "investment contract" or a "profit sharing agreement" and was therefore a security within the meaning of Article 581–4, and (2) the security was not an exempt security under the terms of the Securities Act, or if it was an exempt security, a fact issue was made on the question of whether the sale was made by means of public advertising, thus bringing the transaction within the provisions of the Securities Act despite its otherwise exempt status. Appellant did not plead or seek recovery for common law fraud or misrepresentation.

Dal Mac Commercial Real Estate was in the business of organizing joint ventures in real estate. When it became interested in a property it would investigate the location, zoning and price to fair market value ratio before arranging a purchase. It would then sell fractional interests in the joint venture. The Pioneer Road property was purchased for $490,050.00. A total of $46,-750.00 was paid down and a vendor's lien note for $443,300.00 was executed. Title to the property was taken in the name of J. W. Davis, President of Dal Mac Commercial Real Estate, Inc., as trustee and manager for the joint venture. Dal Mac was paid a 6% commission on the sale of the property to the joint venture, which fact was fully disclosed by the joint venture papers. The appellant purchased a 10% interest in the Pioneer Road Joint Venture for $8,000.00. He purchased his interest on July 17, 1974, from Richard Romano who was a salesman for Dal Mac. The appellant and Romano had been social acquaintances and golfing associates for several years. Over a period of years they had discussed the appellant's possible investment in some of Dal Mac's real estate ventures. A proposal for at least one such adventure was submitted by appellant to his attorney for review which resulted in appellant's decision not to participate in that venture. Appellant and Romano continued to discuss informally the advantage of investing in such ventures. During one such discussion Romano gave appellant a brochure which briefly described the Pioneer Road Venture. Subsequently, appellant advised Romano that he would participate in the venture. On July 17, 1974, Romano and appellant met in Romano's office where appellant looked over and then signed the joint venture agreement. The testimony of appellant and Romano conflicts with regard to the extent to which appellant investigated the brochures and agreements relating to the joint venture.

Appellant contended that he barely looked at them and entered the venture mainly upon the representations and assurances of Romano which he contends were false and misleading. To the contrary, Romano contended that he thoroughly discussed the brochures and related agreements with appellant and that appellant was a sophisticated investor who was fully cognizant of all of the facts concerning the joint venture as well as the representations and provisions of the various agreements. Some twenty-one persons purchased interests in the Pioneer Road Joint Venture. All of the participants resided in or near the Dallas area and were business associates, relatives or friends of Romano and Davis. Dal Mac, Davis and Romano themselves took interests in the venture.

The "Proposal To Form Pioneer Road Joint Venture" stated that the purpose was "of buying and holding this property as an investment which we hope will appreciate in value during the holding period. We anticipate selling the property for a profit at some future date and realizing a capital gain." The joint venture agreement itself, which was signed by all of the participants, contained the following provisions:

"(b) The Venturers hereby enter into and form this Joint Venture *for the limited purpose of holding and liquidating the Venture Property* as an investment only . . . ."

"(c) The scope of the Joint Venture business shall be *limited strictly to sale or liquidation of the Venture Property* as an investment, and such property shall be sold only in large tracts and *shall not be subdivided, developed, or otherwise held for the sale to customers in the ordinary course of business,* and *the only improvements which may be made are those which are imperative to make the property salable as an investment.* The rights and obligations of the Venturers and the administration and termination of the Joint Venture shall be governed by the Texas Uniform Partnership Act, except where provisions in this Agreement to the contrary appear, . . . ." (Emphasis supplied.)

The agreement also contains provisions to the general effect that:

(1) All gains or profits, as well as losses, are shared by the venturers according to their proportionate interests.

(2) Distribution of any profit shall be made only after the property is sold or upon termination of the joint venture.

(3) The venture will be taxed as a partnership under applicable provisions of the Internal Revenue Code.

(4) J. W. Davis was designated as the venture manager.

(5) The venture manager has management of the venture property and has power to execute all necessary documents and to hold title to the property in his name. The venture manager may not sell, mortgage or transfer the property or incur any debt in an amount of more than $2,000.00 unless expressly authorized by vote of 70% of the participants. The venture manager will receive $500.00 per year as an administrative fee.

(6) The remaining participants have the first right of refusal on the sale by any other participant of his interest except in the case of a sale to a family member or family trust. If a venturer dies before the termination of the joint venture, the other participants may buy his interest.

(7) A venturer forfeits his interest if he fails to make a required contribution or if he takes bankruptcy or makes an assignment for the benefit of creditors.

(8) The venture will terminate upon the sale of the property or upon a vote to dissolve by at least 70% of the participants. Upon termination, the assets are to be distributed to the participants in cash or in kind.

Appellant's principal contention is that the interest he purchased was an investment contract and therefore constituted a security under the terms of the Texas Securities Act. The term investment con-

tract is used in the United States Securities and Exchange Act as well as in numerous state securities regulation statutes. See 15 U.S.C.A. § 77b(1); Uniform Securities Act, Sec. 401(1); Annot., 47 A.L.R.3d 1375, 1378. The term has therefore received considerable interpretation and has come to have a definite meaning. 69 Am.Jur.2d, Securities Regulations—State, Sec. 27, p. 1089; Annot., 47 A.L.R.3d 1375, et seq. It refers to a transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely or substantially from the efforts of the promoter or others. *SEC v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244; *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621; *SEC v. Glenn W. Turner Ent., Inc.*, 474 F.2d 476 (U.S.Ct.App. 9th Cir. 1973); *Bruner v. State*, 463 S.W.2d 205 (Tex.Ct.Cr.App.1970); *Koscot Interplanetary, Inc. v. King*, 452 S.W.2d 531 (Tex.Civ.App. Austin 1970, writ ref'd n. r. e.); *Clayton Brokerage Co. of St. Louis, Inc. v. Mouer*, 520 S.W.2d 802 (Tex. Civ.App. Austin 1975), controversy dismissed as moot, 531 S.W.2d 805 (Tex.1975); *King Commodity Company of Texas, Inc. v. State*, 508 S.W.2d 439 (Tex.Civ.App. Dallas 1974, no writ). Thus, the essential elements of an investment contract as contemplated by the securities laws, are () the investment of money (2) in a common enterprise (3) with a view to profits resulting solely or substantially from the efforts of others. "Efforts" of a promoter or others means operational, managerial or developmental efforts. *United Housing Foundation, Inc. v. Forman*, supra; *SEC v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 89; *Blackwell v. Bentsen*, 203 F.2d 690 (U.S.Ct.App. 5th Cir. 1953); 1 Loss, Securities Regulations, 492 (2d Ed. 1961). It does not include the mere holding of property in anticipation of appreciation in value. *Davis v. Rio Rancho Estates, Inc.*, 401 F.Supp. 1045 (S.D.N.Y.1975); *Happy Investment Group v. Lakeworld Prop., Inc.*, 396 F.Supp. 175 (N.D.Cal.1975); *Contract Buyers League v. F & F Investment Co.*, 300 F.Supp. 210 (N.D.Ill., E.D., 1969); 1 Loss, Securities Regulations, 492 (2d Ed.

1961). In determining whether a transaction is an investment contract, the courts will disregard the form and will look to the substance of the transaction, giving effect to the economic realities of the scheme. *Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *United Housing Foundation, Inc. v. Forman*, supra. Judged by the foregoing principles, the undisputed evidence in this record demonstrates that Pioneer Road Joint Venture was lacking in one of the essential elements of an investment contract. Although there was an investment in a common enterprise, there was no promise or expectation of profits resulting solely or substantially from the efforts of others. The evidence shows only that the parties joined together to purchase land and hold it for possible appreciation in value. The terms of the joint venture agreement, as well as the undisputed testimony, reveal that no development or operations were to be undertaken with regard to the property. Profits, if any, would not be realized until the land was sold and the venture terminated, and then would result only from enhancement in the value of the land because of its location and the normal appreciation of neighborhood land values.

■ The association of persons in a joint venture to acquire land to be held for them by a trustee for possible enhancement in value at resale is not within the Securities Act, where the essential element of reliance on the managerial, operational or developmental efforts of others is not present. *Polk v. Chandler*, 276 Mich. 527, 268 N.W. 732 (1936); *Wardowski v. Guardian Trust Co.*, 262 Mich. 422, 247 N.W. 908 (1933); *Busch v. Noerenberg*, 202 Minn. 290, 278 N.W. 34 (1938); *Hanneman v. Gratz*, 170 Minn. 38, 211 N.W. 961 (1927); 1 Loss, Securities Regulations, 491–492 (2d Ed. 1961); Rifkind and Borton, SEC Registration of Real Estate Interests: An Overview, 27 Bus.Law 649, 656 (1972). The only management on the part of the managing venturer in the Pioneer Road Joint Venture was that of insuring the property, paying the taxes and the like—not for profit, but solely to protect and preserve the investment.

Aside from lacking an essential element of an investment contract, the Pioneer Road Joint Venture was not the kind of transaction or scheme for which the Securities Act contemplates a need for the protection of investors. All of the participants were local people who were friends, business associates or relatives of Davis or Romano. Each had a substantially equal opportunity to initially judge the quality and desirability of the investment. All were close to the land and had ample opportunity to keep abreast of the factors affecting its value and the feasibility of resale. Any sale or other use of the property required the participation of at least 70% of the venturers by interest. There was no reliance on the developmental, managerial or operational skills of a promoter or third party in attempting to make a profit and the venturers shared losses and obligations as well as gains, thus making the arrangement more in the nature of a partnership or true joint venture than a sale of securities. *See Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704 (1956); *Oxford Finance Companies, Inc. v. Harvey et al.*, 385 F.Supp. 431 (E.D.Pa. 1974).

Neither would the evidence justify a conclusion that appellant's investment was a "certificate in or under a profit sharing or participation agreement" as included in the Securities Act. See 79 C.J.S. Supp. Securities Regulation § 15, p. 168, 169 (1974); Rifkind and Borton, SEC Registration of Real Estate Interests: An Overview, 27 Bus.Law 649, 650 (1972).

As appellant based his claim solely upon a violation of the Securities Act, and as the undisputed evidence showed the transaction to be neither an investment contract nor a certificate in a profit sharing agreement, the trial court correctly directed a verdict for appellees.

The judgment is affirmed.