Robert J. WILSON, Gerald Froneberger and Mayer W. Perloff, Appellants,

v.

Keith A. LEE, Jr., Max Williams, Claude R. McClennahan and William M. Best, Appellees.

No. 20272.

Court of Civil Appeals of Texas, Dallas.

May 29, 1980.

otherwise work an injury to the plaintiff.

Carl A. Generes, H. Wayne Meachum, Denton & Generes, Dallas, for appellants.

Frederick J. Fowler, Patrick F. McGowan, Strasburger & Price, Dallas, for appellees.

Before ROBERTSON, CARVER and HUMPHREYS, JJ.

CARVER, Justice.

This appeal challenges a summary judgment which held that a joint venture interest in raw land, purchased by investors whose sole expectations of profit or appreciation rests upon market inflation and not upon the managerial or entrepreneurial efforts of others, was not a "security" under the Securities Act. We affirm.

Appellants, plaintiffs below, asserted a cause of action against the appellees under the Securities Act. Tex.Rev.Civ.Stat.Ann. art. 581–1, et seq. (Vernon 1964). An essential element to the cause of action was the sale of a "security" as contemplated under the Securities Act. After discovery, the appellees moved for summary judgment on the ground that the undisputed facts compelled the legal conclusion that they did not offer, or sell, a "security" to the appellants. The appellants did not respond to the motion for summary judgment in the trial court, nor do they offer a factual challenge before this court. It is the appellants' position that the uncontested facts support the conclusion that each of the appellants purchased a "security" from the appellees and may thus prosecute their claims under the Securities Act.

The record reflects that the appellants purchased joint venture interests in real property from Claude R. McClennahan, Inc. (the "company"). The interests purchased were in two joint ventures labeled the Carlton Company Joint Venture No. 1 and 2 (hereinafter referred to as "joint venture"). The appellants testified on deposition that the purpose of the joint venture was to hold the tracts of land comprising the joint venture for appreciation and resale. Appellants never contemplated that any "profit" was to be generated in the joint venture by virtue of development or operation of the property. The company was designated as manager of the joint venture but the managerial activities to be performed by the company for the joint venture were principally those for doing what was necessary to protect, preserve and maintain the property in a condition where it could be resold.

The Multiple Ownership Agreement (hereinafter referred to as "agreement") executed by the participants in the joint venture reflects that ownership of the joint venture property was to be in the purchasers of the joint venture with title to be held by a nominee title holder. The agreement also provides that 60% of the owners may at any time change the nominee title holder to the entity of their choice. The agreement further provides that certain actions can only be taken with the unanimous consent of all owners of the joint venture and gives the owners of sixty percent (60%) in interest of the joint venture the right to direct the operations of the joint venture.

Our Securities Act defines the term "security" as follows:

The term "security" or "securities" shall include any share, stock, treasury stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certificate, preorganization certificate or receipt, subscription or reorganization certificate, note, bond, debenture, mortgage certificate or other evidence of indebtedness, any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security, whether similar. to those herein referred to or not. Provided, however, that this definition shall not apply to any insurance policy, endowment. policy, annuity contract, op-

tional annuity contract, or any contract or agreement in relation to and in consequence of any such policy or contract, issued by an insurance company subject to the supervision or control of the Board of Insurance Commissioners when the form of such policy or contract has been duly filed with the Board as now or hereafter required by law.

Tex.Rev.Civ.Stat.Ann. art. 581–4. The parties are in substantial agreement that this definition does not specifically include or exclude the kind of interest here, and we must look to cases construing the statutory language. The parties are also in substantial agreement that the decisions of the federal system offer a reliable guide because an act of Congress, known as the Securities Act of 1933, 15 U.S.C.A. § 77a, et seq. (1971), includes a definition of "security" in virtually the same wording. In *S.E.C. v. W. J. Howey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the United States Supreme Court held that, in construing the term investment contract, "The test is whether the scheme involves an investment of money in a common enterprise with profits to come *solely* from the efforts of others." [Emphasis added.] 328 U.S. at 301, 66 S.Ct. at 1104, 90 L.Ed. at 1251. In *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the court broadened the statement of the test stating:

> The touchstone [of the test] is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the *entrepreneurial or managerial efforts of others.* By profits, the Court has meant either capital appreciation resulting from the development of the initial investment as in *Jointer*, supra (sale of oil leases conditioned on promoters' agreement to drill exploratory well), or a participation in earnings resulting from the use of investors' funds, as in *Tcherepnin v. Knight*, supra (dividends on the investment based on savings and loan association's profits). [Emphasis added.]

421 U.S. at 852, 95 S.Ct. at 2060, 44 L.Ed.2d at 632. Texas courts have followed *Howey*

and *United Housing* in the construction of the Texas Securities Act definition in *King Commodity Company of Texas, Inc. v. State*, 508 S.W.2d 439 (Tex.Civ.App.—Dallas 1974, no writ) and in *Koscot Interplanetary, Inc. v. King*, 452 S.W.2d 531 (Tex.Civ. App.-Austin 1970, writ ref'd n. r. e.). In addition, the parties concede in their arguments that under *Howey* there was (1) an investment of money, (2) in a common enterprise, and only dispute whether (3) "with profits to come solely from the efforts of others" under *Howey* or "entrepreneurial or managerial efforts of others" under *United Housing*.

Turning to the summary judgment record, we find that the property acquired by the joint venture is in a remote rural area where any immediate use was limited to farming and pasturage. The property was almost equidistant from McKinney, Texas, and Denton, Texas. South of the property lies the extensive upper reaches of the Garza-Little Elm reservoir. North of the property lies similar rural property until one arrives at the Red River boundary of Texas. Each of the appellants was examined in his deposition as to exactly what might be the source of their expectations of profit or appreciation of their investment and each relied, substantially, that market value inflation constituted their only hope. Further, each appellant testified that the services to be rendered by the appellees, or the company, or the trustee holding title, or anyone else, was to keep the property ready to sell when the hoped-for inflation of the market might occur.

Appellants urge that in *Howey* and *United Housing*, the investment was likewise in land and the interest purchased was held to be a "security." Appellants overlook the fact appearing in each case that immediately after the purchase, the investor also made a long term lease for management and control of citrus groves. This long term management and control by *others*, plus the investors' expectation of profits therefrom, was the rationale of each decision. In our case, we do not find long term management because the investors are free

to change managers at any time. Neither do we have management efforts devoted to making a profit, or appreciation, but only serving as a caretaker of the property.

Appellants also urge that "solely" as used in *Howey* does not preclude some participation by the investor along with "others" as shown in pyramid selling schemes. *See S.E.C. v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973), and *S.E.C. v. Koscot Interplanetary, Inc.,* 497 F.2d 473 (5th Cir. 1974). We accept the premise urged but are unable to find any factual relationship to our case. Our record is not one where the "effort" toward profit or appreciation is to be weighed and assessed between the investor and "others." Our record reflects that *neither* investor nor others were to do anything toward profit or appreciation as market inflation was to do it all. We do not deem the common effort of an investor and "others" in mere care-taking of the land in question, however divided between them, to be determinative of the "security" question.

Appellants further urge that "essential managerial effort" supplied by "others" is sufficient to make the interest purchased a "security." This test has been applied in *Searsy v. Commercial Trading Corp.,* 560 S.W.2d 637 (Tex.1977) and *King Commodity Co. of Texas, Inc. v. State,* 508 S.W.2d 439 (Tex.Civ.App.-Dallas 1974, no writ). In these cases the investor purchased an *option* to purchase commodities on the futures market. In these cases, the "others" were brokers in the commodity futures market and the broker's *skill* was found to be the only expectation of profit or appreciation. We are unable to find any factual relationship between these cases and our case. Our record is silent as to a prospect that market inflation would occur through the "essential managerial efforts" of anyone.

Appellants recognize that *McConathy v. Dal Mac Commercial Real Estate, Inc.,* 545 S.W.2d 871 (Tex.Civ.App.-Texarkana 1976, no writ) is perhaps the case most akin to our case on the facts. In *McConathy* the purpose of the venture was stated to be "holding for investment and capital appreciation" a tract of land in Irving near Dallas, Texas. Title to the property had been taken in the name of the president of Dal Mac as trustee and manager of the joint venture. McConathy purchased an interest in the development after speaking to a salesman and examining a brochure describing the property offered for sale. He, along with other joint venture participants, signed a written agreement which contained numerous provisions similar to those in the case at bar. The president of the sales company was designated as venture manager and was paid a fee of $500 per year for administrative expenses and control was given to the investors to override decisions of the venture manager by a 70% vote of the participants. The court in *McConathy* held that the mere holding of property in anticipation of appreciation in value is not within the definition of an investment contract contemplated by the securities laws. The court stated that, "The association of persons in a joint venture to acquire land to be held for them by a trustee for possible enhancement in value at resale is not within the Securities Act, where the essential element of reliance on the managerial, operational or development efforts of others is not present." 545 S.W.2d at 875. The opinion further pointed out that the manager's efforts under this agreement were not the essential managerial ones to success of the enterprise. The court's analysis reasoned that the efforts required of the manager in this venture were simply those of insuring the property, paying the taxes, etc. These efforts were not required to make a "profit" but were efforts solely to protect and preserve the investment. In referring to the nature of the relationship, the court stated, "There was no reliance on the developmental, managerial or operational skills of the promoter or third party in attempting to make a profit and the venturers shared losses and obligations as well as gains, thus making the arrangement more in the nature of a partnership or true joint venture than a sale of securities." 545 S.W.2d at 876. Appellants urge that *McConathy* is distin-

guishable from our case because more extensive authority is given to "others" by the appellants. We disagree. The authority given in our case and in *McConathy* had the same *object*, that is to preserve, protect, and ultimately sell the property when the hoped-for market inflation occurred. In real estate vernacular, the investors in our case acquired and "warehoused" the property until market inflation would produce the profit or appreciation expected. In *Howey*, *United Housing*, *Koscot* and *King* the investors bought an interest in a "retail" venture conducted by "others" while in *McConathy* and our case the investors placed their own goods in a warehouse rented from "others."

We conclude and hold that the investment of appellants, along with others, in a raw land joint venture whose expectation of profit or appreciation was market inflation was not the purchase of a "security" within the definition provided under the Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581–1, et seq. (Vernon 1964). Affirmed.