Stuart C. MANLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–87–173–CR.

Court of Appeals of Texas,
Austin.

June 21, 1989.

Rehearing Denied Aug. 2, 1989.

Linda Icenhauer–Ramirez, Austin, for appellant.

Ronald Earle, Dist. Atty., William G. Reid, Asst. Dist. Atty., and John Morgan, Sp. Asst. Dist. Atty., Austin, for appellee.

Before POWERS, GAMMAGE and JONES, JJ.

POWERS, Justice.

Stuart C. Manley appeals from a trial-court judgment wherein he was convicted, over his plea of not guilty, on the jury's verdict that he had fraudulently sold a security. Texas Security Act, Tex.Rev.Civ. Stat.Ann. art. 581–29(C) (Supp.1989). The trial court ordered confinement for ten years together with a fine of $5,000.00. We will affirm the judgment.

The Texas Securities Act is comprised of Tex.Rev.Civ.Stat.Ann. arts. 581–1 through 581–39 (1964 & Supp.1989). We shall, for convenience, refer to the numbers following the hyphen as "section" numbers.

## THE CONTROVERSY

Section 29 of the Act, entitled "Penal Provisions," punishes as criminal acts several kinds of conduct. Section 29(C) pertains to fraud in various aspects of security sales.

The State averred that Manley defrauded Eric A. Sawyer in selling and offering to sell a "security," namely a 50% share of the working interest under an oil and gas lease in Brown County. The fraud allegedly consisted in Manley's false representations that his company had acquired the lease, upon which Manley would drill a well with the funds received from Sawyer's payment of the purchase price; and in Manley's omission to inform Sawyer of the material fact that Manley had been convicted and punished previously for the theft of property exceeding $10,000 in value.

The State proved at trial that Sawyer paid Manley $16,000 for the fractional share of the working interest, which Manley purported to assign to Sawyer when in fact neither Manley nor his company owned it, and that Manley spent the money for purposes other than drilling a well.

Manley raises two points of error on appeal: (1) that the evidence is legally insufficient to show a violation of Sec. 29(C) because the evidence shows as a matter of law that the transaction was in the context of a "joint adventure" between Manley and Sawyer, and therefore exempt from the Act in its entirety; and (2) the trial court erroneously denied Manley's request for a jury instruction that the Act did not apply to a "joint adventure." In connection with both points of error, Manley urges the indisputable proposition that we must look to the substance of the transaction to ascertain its real nature. *Bruner v. State*, 463 S.W.2d 205 (Tex.Cr.App.1970).

Manley's purported assignment to Sawyer fits squarely within the definition of "security" found in Sec. 4(A) of the Act, which includes "any instrument representing any interest in or under an oil, gas or mining lease." *Muse v. State*, 137 Tex. Crim. 622, 132 S.W.2d 596, 597 (1939); *Atwood v. State*, 135 Tex.Crim. 543, 121 S.W.2d 353, 359-60 (1938, on motion for reh'g). There appears to be no real dispute in that regard; and, for purposes of discussion, we will assume a joint-adventure relationship between Manley and Sawyer.

The issue reduces then to whether the transaction came within the Act generally, and within the anti-fraud provisions of Sec. 29(C) particularly. Contending it did not, Manley points to the following statement by the Supreme Court of Texas in *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704, 709 (1956), involving a claim under the civil-liabilities provisions contained in Sec. 33 of the Act: "It is well settled that the Act does not apply to a joint adventurer and to transactions between joint adventurers." Adopting the literal breadth and import of this statement, Manley argues that the

Texas Supreme Court, exercising its power to construe statutes, created and intended to create an exception to the terms of the Act for *any and all* "transactions between joint adventurers"—even one joint adventurer's fraudulent sale of a security to his co-adventurer. We believe that meaning may not reasonably be assigned to the Supreme Court's statement for the reasons given below; nevertheless, it is a meaning that is obviously permitted by the terms of the statement itself, and the opinion of the Supreme Court is entitled to respectful consideration even if it is not binding in this criminal case, under Sec. 29(C), where we are unaided by any decisions of the Court of Criminal Appeals.[1]

### BROWN V. COLE

Brown, Cole, and Gould each purchased securities (promissory notes and the capital stock of a Mexican corporation) owned by Fields. The Secretary of State had not authorized sale of the securities in Texas, as the Act then required for their lawful sale. The investment failed, resulting in a total loss for all three purchasers. Cole

---

1. Nor have we found any decisions by intermediate appellate courts that apply the *Brown* statement in a criminal case brought under the penal provisions of Sec. 29. We have found several that apply the statement, literally and with no analysis of its meaning, in the context of cases brought under the civil-liability provisions of Sec. 33. They are as follows: *Mackenzie v. Newton*, 341 S.W.2d 498, 501 (Tex.Civ.App.1960, writ ref'd n.r.e.) (defendant not required to obtain dealer's license under the Act before entering joint venture with plaintiff to acquire an interest for their joint ownership); *Mummert v. Stekoll Drilling Company*, 352 S.W.2d 526, 527 (Tex.Civ.App.1961, writ ref'd n.r.e.) (plaintiff's claim on contract for 2% overriding royalty under oil and gas leases, as compensation for locating leases, not barred because he lacked license under the Act, provided his contract showed a joint venture); *McConathy v. Dal Mac Commercial Real Estate, Inc.*, 545 S.W.2d 871, 875 (Tex.Civ.App.1976, no writ) (association of persons in a joint venture to acquire land not within Act where no reliance on others in attempting to make a profit); *Ginther v. Taub*, 570 S.W.2d 516, 526 (Tex.Civ.App.1978, writ ref'd n.r.e.) (plaintiff's claim in *quantum meruit*, based on work done in procuring driller of well on lease, to whom working interest assigned, against defendant with whom plaintiff had "fiduciary relationship," not barred on ground plaintiff not licensed under the Act); *Adickes v. Andreoli*, 600 S.W.2d 939, 943 (Tex.

Civ.App.1980, writ dism'd) (plaintiff's claim for rescission of his purchase of interest in limited partnership, organized to speculate in real estate, founded upon lack of registration of interest as a "security," properly rejected by trial court because it was an interest in a joint venture that did not require registration); *Vick v. George*, 671 S.W.2d 541, 546 (Tex.App.1983) rev'd on other grounds, 686 S.W.2d 99 (Tex. 1984) (implied exemption from Act created in *Brown* not applicable to civil-fraud provisions in Sec. 33(A)(2) because that section applies "whether or not the security or transaction is exempt under Section 5 or 6 of" the Act); *Russell v. French & Associates, Inc.*, 709 S.W.2d 312, 314 (Tex.App.1986, writ ref'd n.r.e.) (investment group's claim for rescission against operator of oil and gas leases, based on his misrepresentation under the Act in making assignments to the group, not barred under joint-venture exemption of *Brown* because it does not preclude application of the anti-fraud provisions of the Act); and *Dunbar v. RKG Engineering, Inc.*, 746 S.W.2d 314, 315 (Tex.App.1988, no writ) (plaintiff's claim of an unspecified nature, arising out of defendant's assignment to plaintiff of working interest in oil and gas leases, properly denied because jury found existence of a joint venture and the assignments were consequently not required by the Act to be registered).

and Gould sued Brown in the civil cause of action authorized by Sec. 33, which permitted purchasers to recover from "sellers" the amount paid for securities sold in violation of the Act, alleging that Brown was a "seller" within the meaning of Sec. 33 owing to his conduct promoting the investment. The trial court withdrew the case from the jury, and gave judgment in favor of Cole and Gould. After the Court of Civil Appeals affirmed the trial-court judgment, Brown obtained writ of error from the Supreme Court of Texas.

In the Supreme Court, Brown advanced four arguments why he was not liable as a "seller" of the securities to Cole and Gould, within the meaning of Sec. 33: (1) he "made no sale of any securities to [Cole and Gould], but was merely a co-purchaser or joint adventurer with them"; (2) he acted merely as an "agent" for Cole and Gould, in transmitting their money to Fields, which precluded his being a "seller" to them; (3) he had not dealt with "securities" at all, within the meaning of the Act; and (4) the transaction was exempt under Sec. 3(k) of the Act, which provided at the time an exemption for the "sale of an interest in any partnership" when its members did not exceed 10 in number, and its organizational expense did not exceed two percent of its total investment capital, as stated in 1935 Tex.Gen. Laws ch. 100, § 3(k), at 260 [Tex.Rev.Civ.Stat. art. 600a, since repealed]. *Brown,* 291 S.W.2d at 707.

In its opinion, the Supreme Court began its discussion of Brown's first and second arguments by stating "the Act does not undertake to regulate purchasers or to protect sellers against purchasers; [o]nly sellers and sales are regulated," citing *Fowler v. Hults,* 138 Tex. 636, 161 S.W.2d 478

(1942) and *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146 (1947). But, the Court noted, Brown's status as a purchaser of the securities did not *automatically* exclude the possibility of his being a "seller" of the securities. The Court then summarized the evidence showing a good deal of "salesmanship activity" by Brown which ultimately induced Cole and Gould to purchase the securities with Brown.[2] Because the Act defined "sell" to include "any act by which a sale is made," and reasoning that a seller "may be any link in the chain of the selling process," the Court concluded that the undisputed evidence showed Brown to be a "seller" even though he was conceded to be a "purchaser" as well. Consequently, he was also shown to be more than a mere "agent" for Gould and Cole in transmitting their funds to Fields (Brown's second argument). *Brown,* 291 S.W.2d at 708–09.

Referring again to Brown's first argument, the Court wrote the passage that lies at the center of the present controversy:

\* \* \* \* \* \*

It is well settled that the Act does not apply to a joint adventurer and to transactions between joint adventurers. Joint adventurers *and partners* are not to be denied the right to recover their interest merely because of a failure *to comply with the Securities Act* and we think it equally true that a dissatisfied joint adventurer may not recover from other joint adventurers merely because of the failure of the latter to comply with the Act. *Polk v. Chandler,* [276 Mich. 527] ... 268 N.W. 732 [ (1936) ].

*Brown* is noteworthy for the "astoundingly broad meaning" it assigned the words "sale" and "seller" in using the "link in the chain" metaphorical approach. *See* Bromberg, *Civil Liability Under Texas Securities Act § 33 (1977) and Related Claims,* 32 Sw.L.J. 867, 880–81 (1978). The Court probably "did not intend to include the secretary who types a soliciting letter for the seller," but the metaphor leaves open the question of who would be included as a "link." Hill, *Pitfalls in the Texas Securities Act,* 10 Sw.L.J. 265, 277 (1956).

---

**2.** Brown presented the proposed investment to Gould, who made it known to Cole. Brown gave Gould a memorandum and prospectus, which included a description of the corporate properties and a financial statement, and obtained additional information for Gould and Cole. Later, and at his own expense, Brown took Cole's auditor to Mexico for a first-hand investigation. When Cole and Gould decided to purchase, they gave Brown their bank checks, payable to him, which he deposited in his own bank account before transmitting the funds to Fields. *Brown,* 291 S.W.2d at 706–709.

To constitute a joint adventure there must be a community of interest and participation in the profits. It is *in the nature of a partnership* engaged in the joint prosecution of a particular transaction for mutual profit.

\*   \*   \*   \*   \*   \*

*Brown,* 291 S.W.2d at 709 (emphasis added).[3] The Court concluded its discussion of Brown's first argument by summarizing the pertinent evidence briefly, and holding that it failed to show the community of interest and joint control necessary for a joint adventure. *Brown,* at 709–710.

The Court turned finally to Brown's two remaining arguments that he had not dealt in a "security" at all, and that the transaction was exempt in any case under Sec. 3(k) of the Act which provided at the time an express exemption for small partnerships having specified attributes. Concerning what constituted a "security," the Court noted that the definition in the Act included "evidence of indebtedness," which encompassed the memorandum supplied by Brown (describing the investment in great detail), augumented by the receipts he had

furnished Cole and Gould for the funds they had given him. Concerning the small-partnership exemption, the Court observed that Brown had failed to prove the requisite attributes of such a partnership, but held that "it appears that the interest sold in this case was in a corporation,—namely, [the Mexican corporation], and therefore the exemption does not apply." *Brown,* at 710–711.

What then did the Texas Supreme Court mean by its statement that "[i]t is well settled that the Act does not apply to a joint adventurer and to transactions between joint adventurers," bearing in mind the context in which the statement occurs?

The Court's statement *might* mean the Act did not apply to joint adventurers, and their transactions *inter se,* because the joint-adventurer relationship was the legal equivalent of a partnership, for purposes of the *express* exemption provided for small partnerships, at the time, in § 3(k) of art. 600a. This meaning is suggested by the generality of the Court's statement, by the Court's three expressions of such equivalency at page 709, and by the reference in

---

**3.** *Polk v. Chandler,* 276 Mich. 527, 268 N.W. 732 (1936), cited in the passage from *Brown,* held that certificates of participation in a joint adventure were not "securities" within the meaning of the Michigan securities act, which required "validation" of securities by the Michigan Securities Commission before they might be legally issued. The court set out its reasoning as follows.

Before the trial-court decree in the case, the Michigan legislature amended the securities act to *expressly* exclude from its coverage "[c]ertificates or other evidences of participation in a joint adventure," the term "joint adventure" being defined to mean a voluntary association of not more than twenty individuals who had simultaneously, without outside solicitation, "joined together for the purpose of carrying out the plan or project for which the association has been organized." *Polk,* 268 N.W. at 734. The amendment became effective in 1935.

However, the relevant events regarding the certificates of participation had occurred in 1930, or *before* the statutory amendment mentioned above. Thus, the court was required to ascertain whether a joint-venture interest was a "security" under the Michigan securities act *before* that amendment. Citing two previous decisions of its own, the Michigan Supreme Court made the following distinction: (1) where persons join together to *purchase* real property, each

paying a proportionate share of the purchase price, the property being held for their benefit by a trustee, their transaction was not within the Michigan securities act requiring "validation" by the securities commission; however (2) where the *sale* of a unit *in* the syndicate is contemplated *after* organization, it "cannot be made without compliance with the 'Blue Sky Law.'" *Id.*

When the Supreme Court of Texas, in *Brown,* stated that "[i]t is *well settled* that the Act does not apply to a joint adventurer and to transactions between joint adventurers" (emphasis supplied), we think the Court probably had in mind its own previous holdings in *Fowler v. Hults,* 138 Tex. 636, 161 S.W.2d 478 (1942) and *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146 (1947). *Fowler* and *Lewis* both held that the Texas Securities Act applied only to the *sale* and *sellers* of securities and not *purchases or purchasers.* The Court repeated this holding in *Brown,* 291 S.W.2d at 708, and it is consistent with the *Polk* observation that *purchases* by joint adventurers, of the kind mentioned above, did not come within that State's securities act, but a subsequent sale of an interest in the venture itself *would* come within the act. Indeed, it would appear quite strange for the Supreme Court of Texas to treat as "well settled" an issue that had been decided *only* by a Michigan court construing *that* State's statute.

the *Polk* case to an *express* exclusion of joint adventurers from the Michigan statute. On the other hand, that meaning appears to be out of place in a discussion of Brown's first argument wherein he contended he was not a "seller" because he was in a joint adventure to *buy* the securities; and it is a meaning more logically related to the Court's discussion of Brown's *fourth* and final argument, contending the transaction was exempt from the Act under the express provision in § 3(k) for small partnerships, which the Court held *inapplicable.*

The Court's statement *most likely* referred, however, to what the Court was obliged to determine under the circumstances of the case: the applicability, *in a joint-adventure context,* of the "well established" rule that the Act regulated only sellers and the sales of securities. Thus, the Court's broad statement meant only

that the Act did not apply to regulate joint adventurers *as purchasers* of securities, nor their transactions *inter se* regarding such purchases. This view imputes to the Court's statement a limitation or qualification not literally contained therein, but it allows the statement a proper place in the Court's analysis; it refers directly to Brown's first argument and the Court's initial citation of the holdings in the *Fowler* and *Lewis* cases, which formed the premise from which the Court's analysis of Brown's first argument began; it makes understandable the "well settled" expression; it corresponds to the distinction drawn in the *Polk* case, relative to the *purchase* of an investment *by* a joint venture as opposed to the subsequent *sale* of an interest *in* the joint-venture itself; and it harmonizes exactly the Court's reasoning with that of the Court of Civil Appeals on the same issue.[4]

4. The decision by the Court of Civil Appeals is reported at *Brown v. Cole,* 276 S.W.2d 369 (Tex. Civ.App.1955), and that Court's discussion of Brown's argument that he was not a "seller" is found at page 378. It is enlightening with respect to the "implied exemption" for which Manley contends, and which the dissenting justice in the Supreme Court attributed to the majority opinion when he wrote: "The doctrine of joint adventurer is an implied exception." *Brown,* 291 S.W.2d at 717 (Smith, J., dissenting). Following a reference to the numerous *express* exemptions contained in Sections 3 and 23 of the Act, the Court of Civil Appeals stated:

A further *implied* exemption has resulted from appellate constructions of the Act *to the effect that it does not undertake to regulate purchasers* or to protect sellers against purchasers of securities. *Fowler v. Hults,* 138 Tex. 636, 161 S.W.2d 478; *Winslow v. Boyd,* Tex.Civ.App., 195 S.W.2d 384 [ (1946) ]; *Fitz–Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256 [ (1951) ]; ....

*Brown,* 276 S.W.2d at 377 (emphasis added). After discussing the meaning of the words "sale," "offer for sale," "sell," and "security," the Court held that a "security" was involved in Brown's transaction with Cole and Gould. Then, in reference to Brown's argument that he was not a "seller," the Court said:

[*Brown* ] forcefully argues that under no circumstances had there been a sale by him to plaintiffs of anything; that they were all purchasers or joint venturers in the acquisition of these so-called securities; and therefore *within the implied exemption of the cases above cited* ; in *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146, 149 [ (1947) ], (a suit to establish a partnership and accounting), the court holding in part that: "Neither petitioner nor respondent was required to register under the Securities Act as a condition precedent to *acquiring* oil and gas leases or other mineral interests"; and further, that if in Lewis' appeal, *the aggrieved partner could not be denied the right to recover his interest in the partnership by failure of some of the partners to comply with the Act, then the converse is equally valid that in this case "dissatisfied joint venturers (Cole and Gould) may not recover of another joint venturer (Brown) because of the lack of registration* of the persons or securities as required by the Securities Act."

*Brown,* 276 S.W.2d at 378 (emphasis added). The emphasized parts of the foregoing quotation make it undeniable that: (1) the "implied exemption" did *not* refer to joint adventurers and their transactions, but to the purchasers of securities, as held in the *Fowler, Boyd,* and *Hull* cases; and (2) that Cole and Gould could not recover from their co-adventurer Brown merely because the securities were not registered—it was necessary instead that they prove that Brown was a "seller." On the second point, one observes that the Supreme Court adopted almost the same language in the sentence following that Court's statement that the Act did not apply to joint adventurers or to their transactions *inter se.* One must therefore conclude that the "well settled" expression used by that Court referred *not* to the Michigan case, but to the *Lewis* and *Fowler* cases cited earlier by the Court for the proposition that the Act did not apply to the purchasers or purchases of securities.

*Fowler, Fitz–Gerald,* and *Boyd*—the decisions cited as authority for the "implied exemption"—simply limited the Act to selling transactions,

If either of the foregoing is the meaning intended by the Supreme Court, then the Court's interpretation of the Act implies nothing very remarkable. Neither of the two meanings will permit Manley's theory in the present case, however, for his theory is that the Court intended to exclude from the Act *all* transactions between joint adventurers, whether those transactions amounted to a purchase *or* a sale of securities, and irrespective of whether fraud was committed in the transaction. That all-encompassing scope is essential to Manley's appeal, for the partnership exemption is no longer part of the Act and it is undisputed that he was not a *purchaser* of any security in a joint adventure with Sawyer. While that scope is permitted by the literal terms of the Court's statement, we believe Manley's interpretation may not reasonably be inferred from that statement for the following reasons.

At the time of the *Brown* decision, the Act contained seventeen "exempt transactions," each of which the Legislature had *expressly* prescribed, defined, and circumscribed in fair detail. *See* 1935 Tex.Gen. Laws ch. 100, § 3, at 259–261 [Tex.Rev.Civ. Stat. art 600a, § 3, since repealed]. Given the inclusion of these seventeen *express* exceptions to the Act's coverage, a venerable rule of statutory construction required a judicial interpretation that the Legislature intended the Act to *apply* in all *other* cases coming within its terms—for example, that it would apply to the sale of partnership interests where the partnership consisted of *more* than ten members, or where its organizational expense *exceeded* two percent of its total investment capital, as distinguished from the sale of an interest in a partnership coming within the exempting provisions of § 3(k). *See State v. Richards,* 157 Tex. 166, 301 S.W.2d 597, 600 (1957). The *Brown* majority could hardly have been unaware of this rule of statutory construction, which it contradicted absolutely and directly *if* the court intended to create, by an exercise of raw judicial power, a new category of "exempt transaction"—consisting of *all* transactions between joint adventurers—which would take its place in equal dignity alongside those provided by the Legislature. Moreover, *if* the Court did indeed create such a new category of "exempt transaction," it did so in an astonishing manner, for the Court omitted entirely to say it *was* taking that extraordinary step, in the face of a long-standing rule of statutory construction to the contrary, and omitted to give any *explanation* or *justification* for doing so. Instead, it left interested persons, the profession, and lower courts to *guess* at *whether* it had created the new exempt category, based perhaps upon whatever rationale a reader might imagine in support of it.[5] This would constitute irresponsible

---

and refused to apply it to transactions where one had *purchased* securities in partnership or joint-adventure with another. *Fowler,* 161 S.W.2d at 482; *Winslow,* 195 S.W.2d at 386; *Fitz-Gerald,* 237 S.W.2d at 258.

**5.** Noting that the *Brown* opinion by the Supreme Court offered no rationale or justification for the "implied exemption" it apparently created in favor of joint adventurers and their transactions between themselves, one writer theorized that the Court might have reasoned as follows: (1) the parties in a joint adventure occupy toward each other a fiduciary relationship attended by high duties, for the breach of which a non-breaching joint adventurer might sue for an accounting under the common law; (2) for this reason, joint adventurers do not need statutory protection as much as ordinary securities investors do; and (3) many joint adventurers, particularly in oil and gas transactions, require a large degree of flexibility, and would be hampered if subject to the stringent regulation provided in the Act. The author treats as a separate topic the *Brown* holding that expanded greatly the concept of "seller" to include a "link" in the selling transaction. Note, *Blue Sky Laws—Securities—Joint Adventure Exception and Definition of "Seller" Under the Texas Securities Act,* 35 Texas L.Rev. 127, 128 (1956).

Of course, the absence from the *Brown* opinion of any justification or rationale for the "implied exemption," *assumed* by the author as a premise, is equally suggestive of a premise that the court *did not* intend to create such an exemption, as pointed out in the text of our opinion. Another writer criticized the *Brown* opinion for misdirected analysis, saying that the *proper* inquiry was not one of Brown's status but whether a "security" had been "sold" by him:

When persons acquire securities together, for example, as co-owners or as joint venturers, they may be regarded as cobuyers rather than as sellers to each other, and several decisions have so treated them. More commonly, the

lawmaking by the Court, which suggests strongly that the Court did *not* intend to create a new class of exempt transactions of the kind hypothesized by Manley. *See Jennings v. Minco Technology Labs, Inc.*, 765 S.W.2d 497, 502 n. 4 (Tex.App.1989, writ requested). We believe instead that the Court intended simply to declare that joint-venture *purchase* transactions were not within the regulation of the Act *because* the "well settled" construction given the Act previously, and its very terms, made it applicable *only* to the *sale* and *sellers* of securities.

### Application of *Brown v. Cole* in Manley's Case

We hold the *Brown* decision did *not* declare that the fraudulent sale of a security by one joint adventurer to another lies outside the Act and the penal provisions of Sec. 29(C). We have given our reasons above. Manley does not contend that his transaction with Sawyer fell within any of the exempt transactions or exempt securities presently listed in Sections 5 and 6 of the Act, nor does he challenge the sufficiency of the evidence showing omissions and misrepresentations of material fact in his sale of the security to Sawyer. We therefore overrule Manley's points of error which depend entirely on a contrary meaning of the statement in *Brown* "that the

Act does not apply to a joint adventurer and to transactions between joint adventurers."

However, if we are mistaken in our understanding of the *Brown* statement, and in our holding that it did not create a new category of exempt transactions when they occur between joint adventurers, whether of the sale or purchase of securities, we must nevertheless overrule Manley's points of error on another holding in *Brown*. We refer to the Supreme Court's discussion of Brown's fourth argument in which he contended his transaction with Cole and Gould was expressly exempt under § 3(k) of the Act as it then existed.

The Court noted that the evidence was disputed or silent regarding the factual elements necessary to qualify for that exempt status—a partnership with 10 members or less, and organizational expenses not exceeding two percent of total invested capital. Then the Court held that the exemption for small partnerships did *not*, in any event, immunize Brown from the civil liabilities of Sec. 33, because the exemption *did not apply* when the thing sold was a "security" that the Secretary of State had not authorized for sale in Texas. *Brown*, 291 S.W.2d at 711. By analogy, we hold that Manley was not immunized from the penal

---

courts have given lip service to this principle, but found that there was no joint venture because some requisite (e.g., joint control, or loss sharing) was lacking.
Bromberg, *Civil Liability Under Texas Securities Act § 33 (1977) and Related Claims*, 32 Sw.L.J. 867, 889–90 (1978). The author cited *Brown* for its want of logic in this respect, with the observation that cases of that kind lead to unnecessarily stringent requirements for proving joint ventures; and that instead of restricting the concept of joint ventures, "courts would do better to abandon the implied exception of joint ventures from [the Act] and ... focus on whether the facts point to a 'security' and 'sale' from one venturer to another." *Id.*, n. 74. *See also* Hartley, *Oil and Gas Securities*, 19 Baylor L.Rev. 449, 465 (1967) ("The 'joint venture vs. investment contract' problems might have been more logically discussed under 'what is a security?' "); and Heath, *New Developments in Real Estate Financing*, 12 St. Mary's L.J. 811, 864 (1981) (quoting Bromberg's view).
These criticisms, too, are valid *only* if one *assumes* with the writers that *Brown* created judi-

cially an "implied exemption" in favor of joint adventurers and *all* their transactions *inter se*, whether those transactions amounted to a sale or a purchase of securities.
So far as our research reveals, no writer has analyzed *whether* the Court did indeed intend such an exception to the Act, as opposed to a simple limitation of the Act to sales and sellers. One writer came close, noting that the "crucial problem" in *Brown* was whether Brown "sold" securities within the meaning of the Act, and that "[t]he theory of the joint venture was significant only as an analytical tool in seeking a solution to this problem." Hill, *Pitfalls in the Texas Securities Act*, 10 Sw.L.J. 265, 276 (1956). Interestingly, he indicates that *Brown* may *not* have *created* a judicial exemption by implication, in his understanding, but only indicated that the Court was "evidently *prepared* to so hold, even in the face of legislative silence on a possible joint adventure exemption." *Id.* at 274 (emphasis added). For this reason, the writer suggested "there is ample basis in the opinion for limitation of the actual holding to the particular facts presented by the case." *Id.* at 280.

provisions of Sec. 29(C), when he unquestionably sold a "security" to Sawyer and does not dispute the State's proof that the sale was fraudulent, because the exemption claimed by Manley would not apply in those circumstances *even if* it had been created in *Brown* as Manley contends.

Accordingly, we affirm the judgment below.